IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CODY A. MCMURRAY,

     Plaintiff,

v.                                                                                  Civ. No. 15-969 GBW/CG

EMERALD CORRECTIONS
MANAGEMENT, LLC, aka
LINCOLN COUNTY
DETENTION CENTER, *et al.*

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Emerald Correctional

Management, LLC ("Emerald") and Linda Corporal's Motion to Dismiss (*doc. 9*),

Defendant Todd Danley's Motion to Dismiss (*doc. 25*), and the parties' accompanying

briefing (*docs. 19, 21, 28, 31*).  Having reviewed the briefing and being fully advised, the

Court will grant Defendants Emerald and Corporal's Motion to Dismiss and will grant

in part and deny in part Defendant Danley's Motion to Dismiss.

### I.   PROCEDURAL POSTURE

Plaintiff Cody McMurray is a former pretrial detainee who was incarcerated at

the Lincoln County Detention Center ("LCDC"), a facility operated by Emerald.  *Doc. 7*

at 3.  Acting through counsel, McMurray is suing Emerald and several employees of

1

LCDC in both their individual and official capacities under 42 U.S.C. § 1983, alleging deprivation of his constitutional rights while he was incarcerated.[1]  *See generally doc. 7.*

Plaintiff initiated suit in the Twelfth Judicial District Court of New Mexico on September 28, 2015.  *Docs. 1-1, 1-2, 1-3*.  On October 27, 2015, Defendants removed the action to this Court pursuant to its federal question jurisdiction under 28 U.S.C. §1331. *Doc. 1*.  Thereafter, Plaintiff amended his Complaint on November 25, 2015, voluntarily dismissing his claims against the Lincoln County Board of Commissioners.  *See doc. 7*. On December 9, 2015, Defendants Emerald and Corporal moved to dismiss Plaintiff's action for failure to state a claim.  *Doc. 9*.  Plaintiff filed his response[2] to the motion on December 22, 2015, and Defendants replied on January 5, 2016.  *Docs. 19, 21*.  On January 13, 2016, Defendant Danley also filed a motion to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief could be granted.  *Doc. 25*. Plaintiff filed his response to the motion on January 26, 2016, and Defendant Danley replied on February 9, 2016.  *See docs. 28, 31, 32.*

II.   **COMPLAINT'S FACTUAL ALLEGATIONS**

Plaintiff was incarcerated at LCDC on January 28, 2014 as a pretrial detainee. *Doc. 7* at 3.  As each of Plaintiff's federal claims stems from a separate set of operative

---

[1] Based on the same underlying facts, Plaintiff had initially brought additional claims alleging deprivation of his state constitutional and statutory rights.  *See doc. 7* at 17-23.  However, these claims have been voluntarily dismissed by Plaintiff during the course of briefing.  *See doc. 19* at 5; *doc. 28* at 1-2.

[2] Plaintiff repeatedly titled his pleadings responding to Defendants' motions as replies.  *See docs. 19, 28*. Under the local rules of civil procedure and other federal procedural rules describing motion practice, these documents should have been properly titled as responses.  *See, e.g.* D.N.M.LR-Civ. 7.4; Fed R. App. P. 27 (a)(3).  For the sake of clarity, the Court will refer to Plaintiff's pleadings as responses.

facts, the Court divides the recitations of factual allegations based on the claim to which each is relevant, rather than proceeding in strict chronological order.

### A.  Relevant Facts: Claim One

On or about March 20, 2014, Plaintiff sustained an injury while handling a razor blade, self-inflicting a deep incision into his middle finger.  *Doc. 7* at 3.  Employees of LCDC took Plaintiff to an unnamed doctor at the Lincoln County Medical Center.  *Id*. The treating physician placed three sutures into his finger and wrapped it in a bandage, which he advised Plaintiff to leave undisturbed for ten days.  *Id*.  The physician also prescribed pain medication for Plaintiff, and he was returned to the LCDC facility.  *Id*.

According to Plaintiff, the relief provided by the prescribed medication dissipated within one hour, causing Plaintiff to experience extreme pain thereafter.  *Id*. Plaintiff alleges that he complained continuously and requested additional medical attention.  *Id.* at 3-4.  Plaintiff asserts that, in response to these requests, the "LCDC medical staff" including Defendant Danley refused to provide any pain medication or take Plaintiff to a hospital.  *Id*.

After three days of inaction, Plaintiff was taken back to the Lincoln County Medical Center.  *Id.* at 4-5.  Plaintiff claims that he was examined by a different physician, who recommended that he be taken to a hospital in El Paso.  *Id.* at 5.  After this request was denied, the treating physician arranged to transport Plaintiff to a hospital in Albuquerque.  *Id*.  A third examining physician at the hospital stated that

Plaintiff's wound did not appear to be infected, and the physician decided against a surgical procedure.  *Id*.

Plaintiff was returned to LCDC, where he was allegedly denied access to his prescribed pain medication for three weeks, causing him extreme pain.  *Id*.  Plaintiff was again hospitalized in Albuquerque, where a surgical procedure resulted in amputation of part of his middle finger.  *Id*.  Following his surgery, he was placed in medical isolation and not allowed to contact family members or seek communication with legal counsel.  *Id.* at 5-6.

### B.  <u>Relevant Facts: Claim Two</u>

Plaintiff claims that, throughout the duration of his detention at LCDC, mice would regularly run across the floor of his cell at night.  *See doc. 7* at 7-9.  Plaintiff also alleged that, despite a requirement that cleaning supplies be provided daily as needed, he and his fellow inmates received such supplies only once per month.  *Id*.  Plaintiff explained that, as a result, the floor of his cell became covered with a considerable amount of mouse excrement.  *Id.* at 9.  These unsanitary conditions were exacerbated by the fact that Plaintiff's toilet had overflown, resulting in an inch of tainted water covering his cell floor from September 21, 2014 to October 9, 2014.  *Id.* at 9-10.  During this period, Plaintiff claims that LCDC guards, at the direction of Lt. Molly Godinez, dropped Plaintiff's bags of food and medication onto the unclean floor each day.  *Id*.  Plaintiff was therefore placed in the unreasonable position of either foregoing necessary

sustenance or consuming food and medication which may be contaminated by exposure to unsanitary conditions.[3]  *Id.* at 10.  LCDC purportedly disciplined Plaintiff for initially refusing to eat the contaminated food.  *Id*.  Thereafter, Plaintiff suffered severe stomach pains as a result of consuming the tainted food and medications.  *Id*.

### C.  Relevant Facts: Claim Three

Plaintiff claims that on or about September 21, 2014, Lt. Godinez utilized mace against Plaintiff a total of five times within five minutes, following two warnings regarding his behavior.  *Doc. 7* at 7.  Plaintiff explains that this conduct was inconsistent with LCDC policy, which requires a minimum of three warnings before authorizing the use of mace against an inmate.  *Id*.  Further, LCDC policy specifies that an inmate may be exposed to mace no more than once every fifteen minutes.  *Id*.  According to Plaintiff, Godinez also did not allow him to decontaminate himself to remove the harmful chemicals after the incident, in violation of LCDC policy.  *Id*.  Finally, Plaintiff claims that Godinez intentionally caused video footage of the incident to become lost, despite her obligation under LCDC policy to document the use of mace against an inmate.  *Id*.

Plaintiff now claims he is entitled to redress for these alleged harms.

---

[3] To underscore the unsanitary nature of these conditions, Plaintiff has also provided factual information regarding the risks of hantavirus, a potentially fatal pulmonary syndrome contracted from exposure to mice feces.  However, Plaintiff does not claim to have contracted hantavirus.

### III.   Motions to Dismiss

Defendants assert that Plaintiff's Complaint should be dismissed as deficient due to Plaintiff's failure to state a claim against any named Defendant and because Emerald cannot be held vicariously liable for unauthorized actions of individual employees under a § 1983 claim.  *Docs. 9, 25*.  Plaintiff responds that his allegations of wrongdoing by each of the individually-named Defendants sufficiently state a claim for relief.  *Docs. 19, 28*.  He further asserts that the Complaint states a claim against Emerald as an entity by raising official-capacity suits against individual defendants.  *Id*.

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the nonmoving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Id*.

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  Further, the court is not required to accept conclusions of law or the asserted application of law to the alleged facts.  *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).  Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief."  *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677-78).

### B.  Analysis

Under the Due Process Clause of the Fourteenth Amendment, a detention center is required to provide a pretrial detainee with "humane conditions of confinement by ensuring . . . the basic necessities of adequate food, clothing, shelter, and medical care

and by taking reasonable measures to guarantee [his] safety." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998)).  "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998).  The Supreme Court has instructed that detention conditions may be "restrictive and even harsh" without violating constitutional rights.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  In addition, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may violate constitutional requirements despite a shorter duration.  *See DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir.2001) (citations and internal quotation marks omitted).

### 1.  *Claims Against Emerald and Its Employees in Their Official Capacities*

Plaintiff is pursuing all three of his federal causes of action under 42 U.S.C. § 1983 against the Emerald entity as well as several of its employees in their official capacities.  *See doc. 7* at 1-2, 11-17.  Unlike a state government, a municipality is not

entitled to sovereign immunity and is considered a "person" of purposes of a § 1983 suit. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). In exercising a traditional government function, a private entity which operates a detention facility on behalf of a county is subject to the same liability under § 1983 as a local government entity. *See, e.g., Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (holding that employees of a private prison-management company may be sued under § 1983 because confinement of wrongdoers, though sometimes delegated to private entities, is a fundamentally governmental function); *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985) (holding that employees of a private medical service responsible for treating state prisoners engaged in state action, therefore subjecting it to suit under § 1983, because it performed "a function which is traditionally the exclusive prerogative of the state"). Accordingly, the claims against Emerald will be analyzed the same as claims against a municipal entity.

As correctly noted by Defendants, a municipality cannot be held vicariously liable under § 1983 merely because of the acts of its agents. *Monell,* 436 U.S. at 691. Rather, a municipality is liable only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Accordingly, in order to establish a recoverable § 1983 claim against a municipal entity, a plaintiff must demonstrate that the deprivation of his rights was the result of an official policy or custom. *Id.* at 90-91; *see also Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("A

plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").  This same standard has been specifically applied to private prison organizations.  *See Smedley v. Corrections Corporation of America,* 175 Fed. Appx. 943, 946 (10th Cir. 2005) ("in order to hold [the owner of a private prison] liable for the alleged tortious acts of its agents, [the inmate plaintiff] must show that [the company] directly caused the constitutional violation by instituting an 'official municipal policy of some nature' . . . that was the 'direct cause' or 'moving force' behind the constitutional violations").  The requisite "policy" can be established by demonstrating: (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

Under this standard, Plaintiff has failed to allege facts sufficient to state a claim upon which relief can be granted.  While detailing the perceived failures and misdeeds of specific LCDC employees, Plaintiff has nowhere asserted that refusal of medical treatment, excessive use of mace, or contamination of food and medicine was consistent with any official policy or accepted custom.  *See generally doc 7*.  Indeed, Plaintiff's only

mention of LCDC policy emphasizes its inconsistency with the conduct of the named

employees. *See doc. 7* at 7 (describing violated LCDC policy regarding use of mace on

inmates); *doc. 7* at 8 (describing only receiving cleaning supplies once a month in

contrast with the fact that inmates were "supposed to get cleaning supplies every day").

Further, Plaintiff's assertions regarding his multiple medical treatments and timely

receipt of sanitation materials for his cell on certain occasions foreclose the possibility of

a policy or entity-wide custom to deprive inmates of such rights. *See doc. 7* at 3, 5

(describing Plaintiff's two trips to see Lincoln County Medical Center doctors and two

trips to the hospital in Albuquerque for medical treatment); *doc. 7* at 7-8 (describing a

two month period and separate week-long period where Plaintiff received sanitation

and cleaning supplies every day, as needed).

Plaintiff's arguments opposing dismissal on the basis of an official policy or

custom are not persuasive.  Plaintiff contends that the "consistency and uniformity" of

wrongful behavior by named officials renders the conclusion that "they are following

policy" both "plausible and [a] near assumption." *Doc. 19* at 3-4.  As an initial matter,

the Court noted above that, by Plaintiff's own account, these deprivations were not

uniform. *Doc. 7* at 3, 5, 7-8 (documenting prison officials providing medical care and

cleaning supplies to detainees).  More importantly, multiple alleged wrongdoings by

the same few named individuals are not indicative of an overall policy affirming or

directing such conduct.  By contrast, Plaintiff appears to allege that these named

individuals acted in bad faith to undermine normal prison procedures as well as attempts by other LCDC employees to provide satisfactory conditions. *See, e.g. doc. 7* at 5 (alleging that Defendant Danley taunted Plaintiff while refusing to provide him medical care); *doc. 7* at 7 (alleging that Godinez destroyed footage to remove evidence of a policy violation); *doc. 7* at 8-9 (alleging that Godinez deliberately failed to provide essential sanitation supplies which inmates were supposed to receive and deceived other LCDC officials so they would also fail to provide these materials). While such allegations would be probative of constitutional claims against certain individuals, they undermine Plaintiff's assertion that such conduct was performed pursuant to an official LCDC policy or custom. As such, even presuming wrongdoings on the part of individual employees, no set of facts asserted by Plaintiff establish that an official policy or custom promulgated by Defendant Emerald was the cause or moving force behind the deprivation of Plaintiff's constitutional rights.

The Court is similarly unconvinced by Plaintiff's argument regarding official capacity. While seemingly conceding that *Monell* forecloses entity liability under a *respondeat superior* theory, Plaintiff nonetheless claims that, by suing employees in their official capacities, he is able to establish vicarious entity liability for the individual wrongdoings of these employees. *See doc. 19* at 2-3. This assertion is incorrect. A suit against an officer in their official capacity, despite naming an individual, is actually a suit against the entity employing the officer. *Kentucky v. Graham,* 473 U.S. 159, 165

(1985); *see also Myers*, 151 F.3d at 1316 n. 2 ( "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.") (quotation marks omitted). Thus, plaintiff may not access a theory of recovery specifically foreclosed against the entity merely by naming specific employees in their official capacities, as there is no legal difference between an official-capacity suit against an employee and a suit against the entity itself. *See Burdex v. Wyatt*, No. CIV-08-1032-D, 2011 WL 864849, at *13 (W.D. Okla. Jan. 27, 2011) (holding that a § 1983 official-capacity claim against an employee of a private prison must demonstrate the same official policy or custom as is required for a suit against a municipal entity itself).

For these reasons, the Court concludes that Plaintiff has not asserted sufficient facts to establish the necessary elements for any claim against Defendant Emerald, or against individuals in their official capacity. Therefore, dismissal of those claims is proper.

### 2. *Claim One under 42 U.S.C. §1983: Ignoring Plaintiff's Severe Pain and Denying Him Adequate Medical Care*

As indicated, the Eight Amendment requires that a pretrial detainee receive "humane conditions of confinement" including adequate medical care. *Ledbetter*, 318 F.3d at 1188. Under this standard, however, a detainee seeking to establish liability for unconstitutional conditions of confinement must demonstrate that the official both knew of and disregarded an excessive risk to the detainee's health and safety. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This state-of-mind element is subjective,

13

requiring that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

It is important to note that not all claims of inadequate medical treatment rise to the level of a constitutional violation.  For example, claims establishing mere negligence or medical malpractice are insufficient to demonstrate an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Similarly, the fact that a plaintiff disagreed with the diagnosis or course of treatment by the medical staff does not establish a constitutional deprivation.  *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

     i.   <u>Individual-Capacity Claim against Defendant Todd Danley</u>

With regard to his allegations against Defendant Danley, the Court finds that Plaintiff has stated a claim which is sufficiently plausible on its face to survive dismissal under the 12 (b)(6) standard.  Plaintiff's Amended Complaint specifically identifies Danley as a member of the medical staff and claims that he delayed for three hours before initially seeing Plaintiff despite the fact that Plaintiff had been complaining of severe pain to the guards throughout the night.  *Doc. 7* at 3-4.  When he did visit Plaintiff, it is alleged that he refused to examine the injury despite Plaintiff informing him of extreme pain.  *Id*. at 4.  Plaintiff continued to request assistance from Danley throughout the day, but Danley refused to take him back to a doctor in order to obtain

more effective medication. *Id*. According to Plaintiff, Danley was aware of his excruciating pain yet refused on multiple occasions to take any action to alleviate his suffering or to provide a doctor. *Id*. These refusals purportedly lasted three days, despite Plaintiff crying and begging for help. *Id*. Danley was also allegedly put on notice by other inmates who were concerned with Plaintiff's suffering. *Id*. at 4-5. Plaintiff claims that in response to these concerns, Danley taunted Plaintiff about his injury. *Id*. at 5.

These allegations, taken as true, would sufficiently establish a constitutional claim upon which relief could be granted. Plaintiff's claim that both he and other inmates repeatedly informed Danley of Plaintiff's suffering, if proven, would demonstrate that he was aware of circumstances constituting a substantial risk to Plaintiff's health and safety. *See Farmer*, 511 U.S. at 837. Further, Plaintiff's contention that Danley was both dismissive and derisive of Plaintiff's pain could indicate a reckless disregard for the risk posed to his health. *Id.*; *see also Estelle*, 429 U.S. at 104 (finding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]' proscribed by the Eighth Amendment") (internal citations omitted). Finally, Plaintiff's assertion that this failure to provide adequate medical care caused periods of intense suffering and permanent injury, while serving no legitimate penological purpose, would establish a basis for relief. *See Estelle*, 429 U.S. at 103 ("denial of medical care may result in pain and suffering which no one

15

suggests would serve any penological purpose.  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . .") (internal citations omitted).

Defendant Danley argues that dismissal is proper simply because there is no allegation that he was a doctor capable of prescribing additional medication and that no medical professional had stated that Plaintiff required additional medication.  *See doc. 25* at 5.  This argument is unconvincing.  First, while Plaintiff did identify Danley as a member of the prison medical staff (*see doc. 7* at 3-4), this is not a necessary factor to establish liability for denial of medical attention.  *Estelle*, 429 U.S. at 104-5 (holding that deliberate indifference to medical needs is actionable under § 1983 whether manifested by doctors in their response to the need or by other officials in delaying access to necessary medical care).  The facts, as pled, could support a finding that Plaintiff's screaming and crying in pain, together with the visible deterioration of his wound, would have alerted even a lay person to his need for further medical attention, thereby imposing a duty to procure such care.  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (defining a sufficiently serious medical need as one which is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention"); *Grant v. Bernalillo County Detention Ctr.*, 173 F.3d 863, 1999 WL 157415 at *2 (10th Cir. 1999) (holding that prison officials may be liable under the Eighth Amendment for delay in treatment which results in permanent handicap where it is apparent that delay would

exacerbate prisoner's medical problems).  Thus, denial of Defendant Danley's motion to dismiss Plaintiff's individual-capacity claim against him is appropriate.

> ii.   <u>Individual Capacity Claim against Defendant Linda Corporal</u>

Plaintiff has also asserted his first claim for relief against Defendant Corporal in her individual capacity, claiming that her deliberate indifference to his need for medical attention caused injuries in violation of his constitutional rights.  However, unlike the detailed factual accusations levied against Danley, Plaintiff has presented no facts indicating that Corporal was personally aware of the significant risk to Plaintiff's health or that she recklessly disregarded such risk.  Indeed, Corporal is identified only once in Plaintiff's recitation of facts, and this single mention merely stated that she led the LCDC medical team.[4]

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 545 (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678.  Rather, a plaintiff must provide factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Twombly*, 550 U.S. at 545.

---

[4] In opposing dismissal of Defendant Corporal, Plaintiff attempts to use his identification of her as a leader of the medical team in order to attribute liability upon her for all accusations levied against the medical team generally.  *See doc. 19* at 4.  However, it is well settled that a supervisor may not be held vicariously liable for the misdeeds of their agents.  *Iqbal*, 556 U.S. at 677; *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (supervisor must actively participate or acquiesce in constitutional deprivation and act knowingly or with deliberate indifference in order to establish liability under §1983*).*

Here, Plaintiff's claim against Corporal states merely that "Defendants LCDC, Danley, and Corporal, by deliberately ignoring the multiple days of pain Plaintiff was in, and by not providing him 'access to medical care' . . . violated Plaintiff's substantive due process rights" and that Plaintiff is entitled to punitive damages due to the "malicious state of mind of Danley and Corporal, exhibited by refusing to provide Plaintiff with access to medical attention . . . ." *Doc. 7* at 13.  In stark contrast to his statements regarding Danley, Plaintiff provides no factual assertion that he or anyone else informed Corporal the he was experiencing pain and required further medical attention to avoid a risk of more serious injury.   Similarly, Plaintiff attributes no statements or conduct to Corporal which would create a plausible inference that she was aware of and recklessly disregarded such conditions to the detriment of his health and safety.

Absent any factual contentions of personal wrongdoing, Plaintiff's claim against Corporal consists of precisely the type of formulaic recitations of elements and threadbare conclusions found insufficient under the *Twombly/Iqbal* standard. Accordingly, dismissal of this claim against Defendant Corporal is warranted under Rule 12 (b)(6).

### 3.  *Claim Two under 42 U.S.C. §1983: Contamination of Plaintiff' Food and Medication through Exposure to Unsanitary Conditions.*

Plaintiff claims that his Fourteenth Amendment rights were violated through unsanitary conditions in his cell.  *Doc. 7* at 7-9.  He further claims that the harm from such conditions was exacerbated by LCDC employees deliberately depositing his food

and medications onto the floor, which was contaminated with sewage and rodent fecal matter.  *Doc. 7* at 9-10, 14.  Plaintiff asserts that these inhumane conditions caused him physical illness.  *Doc. 7* at 10, 15.

As noted, the prohibition against cruel and unusual punishment embodies the "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle*, 429 U.S. at 102.  Applied to conditions of confinement, these protections require that inmates be kept in humane conditions in which officials take reasonable measures to guarantee their health and safety.  *See Farmer,* 511 U.S. at 832.  Our Circuit has specifically found unconstitutional conditions where flooding or other circumstances expose inmates to the fecal material, due to both the violation of human dignity and the significant health risk from direct contact and contamination of food and water.  *See DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001).  However, despite the unacceptability of such conditions, Plaintiff has failed to state a claim upon which relief could be granted.

With regard to his claim against Defendant Emerald, the Court has explained above that Plaintiff failed to allege that the unsanitary conditions were caused by an official policy or accepted custom of LCDC.  On the contrary, Plaintiff contends that such mistreatment was the direct result of deliberate abuses by Godinez, who directed that food be deposited on the unsanitary cell floors and regularly lied to other LCDC officers in order to deprive inmates of cleaning supplies to which they were entitled.

19

*See doc. 7* at 7-10.  Given these stated facts, Plaintiff has not established any liability

against Emerald, which may not be held vicariously liable for the violations committed

by Godinez.  *See Monell,* 436 U.S. at 691.  Further, while the facts asserted by Plaintiff

may well be sufficient to state an individual-capacity claim against Godinez, Plaintiff

has voluntarily dismissed all claims against her without prejudice.  *Doc. 26*; *doc. 28* at 2.

Accordingly, dismissal of Claim Two is appropriate under Rule 12(b)(6).

**4.**   ***Claim Three under 42 U.S.C. §1983: Excessive Use of Force in Spraying
Plaintiff with Mace and Intentional Spoliation of Video Evidence***

In his third claim for relief, Plaintiff asserts that on or about September 21, 2014,

he was deprived of his constitutional rights when Lt. Godinez utilized excessive force

by spraying Plaintiff with mace five times within five minutes, following only two

warnings regarding his behavior.  *Doc. 7* at 7.  Plaintiff further claims that Godinez did

not allow him to decontaminate himself after the incident and intentionally caused the

video footage documenting her conduct to become lost.  *Id*.  However, these facts, taken

as true, do not state a claim for relief against any Defendant in the present action.

As stated above, Emerald may be held liable for a § 1983 claim only where

Plaintiff contends that an official policy or custom was the direct cause or moving force

behind the alleged constitutional deprivation.  *See Smedley,* 175 Fed. Appx. at 946.  Here,

Plaintiff explicitly states that each of Godinez's alleged wrongdoings related to this

claim were in direct violation of LCDC policies, including her attempts to destroy

evidence of excessive force.  *See doc. 7* at 7.  As such, Emerald cannot be held liable for

20

the unauthorized actions of Godinez.  *Monell,* 436 U.S. at 691.  Further, the Court has

explained that it will not determine whether the facts asserted state a claim against

Godinez, since Plaintiff has voluntarily dismissed all claims against her.  *Doc. 26*; *doc. 28*

at 2.  Accordingly, dismissal of Claim Three is warranted.

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that: (1) Plaintiff's Claims One, Two,

and Three against Defendant Emerald and LCDC employees in their official capacities

fail to state a claim upon which relief can be granted; (2) Plaintiff's Claim One against

Defendant Corporal in her individual capacity fails to state a claim upon which relief

can be granted; (3) Plaintiff's Claim One against Defendant Danley in his individual

capacity sufficiently states a claim which relief can be granted; and (4) Plaintiff's Claims

Two and Three fail to state a claim against any remaining defendant.  Accordingly, a

partial judgment of dismissal pursuant to Rule 12(b)(6) is appropriate.

IT IS THEREFORE ORDERED that Defendant Emerald's and Defendant Corporal's Motion for Dismissal (*doc. 9*) is GRANTED and Plaintiff's claims against those Defendants are hereby dismissed without prejudice.  Defendant Danley's Motion to Dismiss (*doc. 25*) is GRANTED as to the claim against him in his official capacity and DENIED as to the claim against him in his individual capacity.

GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**